A07A1560. MORALES v. THE STATE.
(649 SE2d 873)

JOHNSON, Presiding Judge.

A jury found Marco Antonio Morales guilty of kidnapping, false imprisonment, aggravated assault committed by a motor vehicle, family violence battery by striking, family violence battery by choking, possession of cocaine, criminal trespass by damage to property, harassing phone calls, and two counts of stalking. Morales was found not guilty of aggravated assault allegedly committed with a box cutter, and the trial court directed a verdict of not guilty as to theft by

---

taking. Morales appeals, alleging the evidence is insufficient to support the jury's verdict, the trial court erred in its admonishment of the victim during her testimony and in questioning the victim during her testimony, trial counsel rendered ineffective assistance of counsel in failing to object to the trial court's admonishment and questioning of the victim, and the trial court erred in admitting into evidence state's exhibits 4 and 21. We find no reversible error and affirm Morales' convictions.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "The credibility of witnesses, including the victim, and the weight to be given to their testimony, are matters within the province of the trier of fact."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in this light, the evidence showed that the victim was Morales' wife on the dates alleged in the indictment.[4] However, they were estranged and not living together at the time. On March 19, 2005, the victim called police when Morales confronted her at her house and argued with her about a boyfriend he had supposedly heard about. When the argument escalated, the victim fled the house, and Morales subsequently left with the baby in her car. The victim returned to the house when the police arrived and discovered that her house had been "destroyed": the refrigerator, stereo system and table had been knocked over. Morales later returned to the house and admitted causing the damage. After the victim kicked him out of the house, Morales began making threatening phone calls. The police were called again when the victim heard someone kicking the doors and breaking a window. Morales admitted causing the damage and turned himself in to police.

On March 24, 2005, Morales pulled his car next to the victim's car and then pursued the victim's car when she attempted to get away. Morales forced the victim to stop by pulling in front of her car, and he pointed what she believed to be a gun at her. The next day, the victim drove to the courthouse and obtained a temporary protective order against Morales. As the victim entered her car to leave the courthouse, Morales pushed her headfirst into the passenger side floorboard of her car. The victim screamed and kicked, but Morales

---

[1] *Sherman v. State*, 284 Ga. App. 809 (644 SE2d 901) (2007).

[2] (Citation omitted.) *Sims v. State*, 275 Ga. App. 836, 837 (1) (621 SE2d 869) (2005).

[3] See id.

[4] The victim obtained a final divorce from Morales prior to trial.

repeatedly screamed that he was not messing with her anymore. As Morales drove the victim's car away from the courthouse, the victim managed to open the passenger door and throw herself out of the car. A tire of the car ran over her foot as she escaped, tearing off the skin and exposing her bones. The victim ran to a nearby construction site, screaming for help. When police arrived, the victim told an officer that her husband had inflicted the injuries. She then named Morales.

A witness driving away from the courthouse saw a person's legs hanging through the bottom of the open passenger side of a vehicle in front of him. He heard a person scream and saw the vehicle swerve. Alarmed, the witness followed the vehicle when it pulled off the road near a construction site. The witness approached the vehicle and saw a man he described as a Mexican with braces on his teeth leaning over the vehicle's center console on top of a Caucasian woman whom the man was either choking or grabbing by the shirt. When the man saw the witness, the man got off the woman and the woman ran to the construction site.

Morales is a Hispanic man who had braces on his teeth at the time in question. The victim unequivocally stated in a written statement to police and at trial that Morales was the individual who attacked and kidnapped her. Morales was arrested the following day and found to be in possession of cocaine.

In a two-paragraph argument, Morales claims the evidence was insufficient to support the jury's verdict on the charges of kidnapping, false imprisonment, aggravated assault (committed by running over the victim's foot with a motor vehicle), two counts of battery (committed by striking the victim and by choking the victim), and stalking because the victim "did not identify, under oath at trial, [Morales] as her assailant." However, the record belies this assertion. The victim testified under oath that while she did not see her assailant, she recognized her assailant's voice. She gave two written statements to the police and testified at trial that Morales, her husband at the time, committed the offenses against her. In addition, another witness to the kidnapping described the assailant, and this description matched Morales' appearance at the time of the incident. The voice identification testimony, as well as the testimony of the eyewitness, were more than sufficient to enable a rational trier of fact to find Morales guilty beyond a reasonable doubt of the offenses for which he was convicted.[5]

Morales also claims in a one-sentence argument that the evidence produced at trial "failed to exclude every reasonable possibility

---

[5] See *McKay v. State*, 251 Ga. App. 115, 117 (553 SE2d 672) (2001); *Stevanus v. State*, 185 Ga. App. 7, 10 (1) (363 SE2d 322) (1987).

except that of [Morales'] guilt." However, the legal principle that the state must exclude every reasonable hypothesis except that of the defendant's guilt only applies to cases where the evidence is purely circumstantial. Here, all the evidence, including identification evidence, is direct evidence. And, Morales has failed to offer any hypothesis whatsoever — reasonable or otherwise — that the evidence was consistent with his innocence.[6] We find ample evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Morales was guilty of the offenses of which he was convicted.

2. Morales contends the trial court erred in its admonishment of the victim during her testimony. The record shows that the victim was clearly a reluctant witness. Shortly into her testimony, the victim was asked if a window had been broken at her home. The victim responded in the negative. At that point, the court sent the jurors out of the courtroom and admonished the victim to tell the truth. According to Morales, the court's admonishment (1) was improper and amounted to the court leaving its position of impartiality during the trial, (2) interfered with the jury's factfinding process, and (3) altered the entire tenor of the victim's testimony. We find no error.

A trial court has broad discretion in its handling of a trial:

> It is the duty of the trial court to control the trial of the case and to insure a fair trial to both sides. Sometimes this requires interference by the court with the conduct of counsel or with a witness in the trial. The trial judge has broad discretion in handling these matters and we are loath to interfere with that discretion unless it is manifestly abused by clearly demonstrated prejudice or unfairness.[7]

In the instant case, the trial court's admonishment, outside the presence of the jury, that the victim tell the truth was certainly an appropriate exercise of discretion in controlling the trial and was not unfair or prejudicial to Morales.

Contrary to Morales' assertion, the comments were not improper and did not amount to the court leaving its position of impartiality during the trial.[8] In addition, the comments were made outside the presence of the jury and did not interfere with the factfinding process of the jury. And, it is clear from the record that the comments did not alter the victim's testimony, as the victim's subsequent trial testimony was consistent with her previous written statements to the

---

[6] See *Sherman*, supra.

[7] *Brumelow v. State*, 239 Ga. App. 119, 121 (3) (520 SE2d 776) (1999).

[8] See OCGA § 17-8-57 (it is error for a judge in any criminal case to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused).

police. We find no error in the trial court's attempt, outside the presence of the jury, to encourage the victim to tell the truth.

3. Morales contends the trial court erred in questioning the victim in the presence of the jury. Again, we find no error. The record shows that the following colloquy ensued during the victim's cross-examination:

> Defense Counsel: Now, at an earlier conversation that we had together you indicated that when he pointed the item out the window, on the earlier date, that you thought it may have been a gun, but it also may have been a cell phone?
> A: That's correct. And I did make that statement to the police, that I didn't want to falsely accuse him of something that I wasn't a hundred percent sure I was seeing. Because [Morales], at one time, played a joke similar to that and had a cell phone in his hand.
> COURT: Let me ask you this. Did you make the 911 call?
> A: Yes, I did.
> COURT: Go ahead.

According to Morales, this question implied, expressed and intimated an opinion on the facts of the case. We disagree.

While it is error for any judge in a criminal case to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused,[9] the trial court may propound questions to any witness to develop the truth of the case.[10] Here, the court's single question to the victim did not express or intimate an opinion as to proof or as to guilt; nor was the question argumentative.[11] Contrary to Morales' argument, the question cannot reasonably be construed as tending to discredit the victim or her testimony, or as authorizing a reasonable inference by the jury that the trial court entertained an inference unfavorable to Morales. The trial court did not abuse its discretion by asking the single question.

4. Morales argues that his trial counsel was ineffective for not objecting to the court's admonishment of the victim or the court's question to the victim, as discussed in Divisions 2 and 3, above. For the reasons noted in those divisions, any objection would have been without merit. And, failure to raise a meritless objection cannot

---

[9] OCGA § 17-8-57.

[10] *Eubanks v. State*, 240 Ga. 544, 546-547 (2) (242 SE2d 41) (1978); *Goodrum v. State*, 269 Ga. App. 397, 399-400 (1) (604 SE2d 251) (2004).

[11] See *Goodrum*, supra at 400.

constitute ineffective assistance of counsel.[12] Morales' enumerations of error regarding ineffective assistance of counsel lack merit.

5. Morales contends the trial court erred in admitting into evidence state's exhibits 4 and 21, a cell phone and a photograph of the cell phone. According to Morales, the chain of custody for the cell phone was not properly established because the witness who found the cell phone never testified at trial. We find no error.

The record shows that while an officer was taking photographs on the scene where the victim's car stopped and the victim threw herself from the car, a witness approached him and told the officer that he had found a cell phone at the scene. The witness showed the officer where he had found the cell phone, and the officer photographed the cell phone in that location. The witness subsequently left the scene without giving the officer his name. The cell phone was set up in Spanish rather than English, and the victim told an officer that Morales owned a similar cell phone that he had previously pointed at her as if it were a gun.

Items of evidence which are distinct and recognizable physical objects, such that they can be identified by the sense of observation, are admissible into evidence without the necessity of showing a chain of custody.[13] Thus proof of chain of custody was unnecessary prior to the admission of the exhibits at issue in this case.[14] Moreover, the fact that the person who gave the cell phone to the officer was unidentified and did not testify at trial merely goes to the weight to be given the evidence, not its admissibility.[15] The trial court did not err in admitting into evidence the cell phone and the photograph of the cell phone.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JULY 19, 2007.

*Michael B. Nation*, for appellant.
*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney*, for appellee.

---

[12] See *Patterson v. State*, 259 Ga. App. 630, 634 (4) (577 SE2d 850) (2003); *Mency v. State*, 228 Ga. App. 640, 644-645 (2) (b) (492 SE2d 692) (1997).

[13] See *Washington v. State*, 283 Ga. App. 570 (2) (642 SE2d 199) (2007); *Pyburn v. State*, 175 Ga. App. 158, 160 (8) (332 SE2d 899) (1985).

[14] See *Young v. State*, 280 Ga. 65, 67 (5) (623 SE2d 491) (2005).

[15] See generally *Malone v. State*, 219 Ga. App. 728 (1) (466 SE2d 645) (1995) (conflicts in details concerning the chain of custody of an object go to the weight, credit and effect of the evidence, not its admissibility).